---

**UNITED STATES DISTRICT COURT**          **SOUTHERN DISTRICT OF TEXAS**

---

| | | |
|---|---|---|
| Lauren Davis, *on behalf of herself and others similarly situated*, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 4:19-cv-1961 |
| Mindshare Ventures L.L.C., d/b/a AtlasRTX, Trendmaker Homes DFW, L.L.C., and Trendmaker Homes, Inc., | § § § § | |
| Defendants. | § | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# Table of Contents

Statement of the Nature and Stage of this Proceeding.................................................... 1

Statement of Issues ......................................................................................................... 1

Summary of the Settlement.............................................................................................. 1

The Telephone Consumer Protection Act........................................................................ 2

Summary of Facts Underlying Plaintiff's Claims............................................................ 3

Argument .......................................................................................................................... 4

   I.   The class meets all requirements for certification under Rule 23...................................... 4

      A.   The TCPA claims at bar are well suited for class treatment. ........................................ 4

      B.   The class satisfies the requirements of Rule 23(a). ...................................................... 5

         1.   The class is so numerous that joinder of all members is impracticable................... 5

         2.   Common questions exist as to each class member. ................................................... 6

         3.   Plaintiff's claims are typical of the claims of class members................................. 7

         4.   Plaintiff and her counsel will fairly and adequately protect the interests of class members.......................................................................................................................... 8

      C.   The class satisfies the requirements of Rule 23(b). ..................................................... 9

         1.   Questions common to class members predominate over any questions affecting only individual members............................................................................................... 9

         2.   A class action is superior to other available methods for the fair and efficient adjudication of this matter. ........................................................................................ 10

   II.   The settlement is fair, reasonable, and adequate, under Rule 23(e). ............................. 12

      A.   There is no fraud or collusion behind the settlement.................................................. 14

      B.   The complexity, expense, and likely duration of litigation favors settlement........... 14

      C.   The stage of the proceedings supports preliminary approval of the settlement. ........ 15

      D.   The probability of Plaintiff's success on the merits, the range of possible recovery, and the uncertainty of damages favor preliminary approval. ............................................... 16

E.     The opinion of Plaintiff's counsel further supports preliminary approval of the settlement. ............................................................................................................ 17

F.     Plaintiff and her counsel and have adequately represented the class. ........................ 18

G.     The settlement treats class members equitably ............................................................ 18

III.     The robust notice plan is more than sufficient. ............................................................ 19

IV.     This Court should set a final fairness hearing. ............................................................ 20

Conclusion ............................................................................................................................ 21

## Table of Authorities

**Cases**

*Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004)................................................. 6

*Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ........................................... 5

*Arredondo v. Flexi Corp.*, No. 5:17-CV-4, 2017 WL 7796192 (S.D. Tex. Aug. 18, 2017).......... 3

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) ..................... 14

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ............................... 7

*Boykin v. Georgia–Pacific Corp.*, 706 F.2d 1384 (5th Cir. 1983)................................................. 5

*Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2014 WL 11894430 (S.D. Fla. Sept. 29, 2014) ......................................................................................................................... 7, 8

*Chavez v. Plan Benefit Services, Inc.*, No. AU-17-CA-00659-SS, 2019 WL 4254627 (W.D. Tex. Aug. 30, 2019) ................................................................................................................. 8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).................................................................... 19

*Ellison v. Steven Madden, Ltd.*, No. CV11-5935 PSG (AGRX), 2012 WL 12884916 (C.D. Cal. Sept. 25, 2012).............................................................................................................. 17

*Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005) ...................................................... 8

*Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ................................................................................................................................. 7, 10

*Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008).................................................. 9

*Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941 (S.D. Fla. May 24, 2019) ......................................................................................................... 17

*Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) ................................................................................................................... 12

*Halperin v. Youfit Health Clubs, LLC*, No. 18-61722-CIV (S.D. Fla. May 29, 2019)................. 17

*Henderson v. Eaton*, No. Civ. A. 01-0138, 2002 WL 10464  (E.D. La. Jan. 2, 2002)....... 6, 15, 18

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)...................................... 15

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ............................................................... 6

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541 (S.D. Tex. 2005)............. 6

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891 (E.D. La. 2012) ................................................................. 14

*In re Pool Prods. Distribution Market Antitrust Litig.*, MDL No. 2328, 2015 WL 4875464 (E.D. La. Aug. 13, 2015) ........................................................... 16

*In re Seitel, Inc. Sec. Litig.*, 245 F.R.D. 263 (S.D. Tex. 2007) ........................................ 7

*Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. 2013) ..................... 5

*James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ................................................... 11, 20

*Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291 (S.D. Miss. 2014) ..................... 15, 16

*Kazemi v. Payless Shoesource, Inc.*, No. C-09-5142 EMC, 2011 WL 13152859 (N.D. Cal. Sept. 6, 2011) ......................................................................... 17

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010) ..................................... 18

*Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) ............................... 10

*Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) .................................................... 6, 7, 11

*Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716 (S.D. Tex. 2012) .................................... 9

*Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS MDD, 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ............................................................. 17

*Luther v. Convergent Outsourcing, Inc.*, No. 15-10902, 2016 WL 1698396 (E.D. Mich. Apr. 28, 2016) ............................................................ 12

*Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013) .............. 12

*Marengo v. Miami Research Assocs., LLC*, No. 17-CV-20459-JLK, 2018 WL 2744606 (S.D. Fla. June 7, 2018) ............................................................ 17

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660 (M.D. Ala. 1988) ..................... 15, 18

*Melito v. American Eagle Outfitters, Inc.*, No. 14-CV-2440, 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017) ........................................................... 17

*Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301 (S.D. Fla. 2017) ......................... 5, 10

*Mohamed v. Off Lease Only, Inc.*, No. 15-CV-23352-CIV (S.D. Fla. June 27, 2019) ................. 17

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ......................... 5, 9

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. 2015) .................... 8, 10, 11

*Pimental v. Google Inc.*, No. 11-CV-02585-YGR, 2013 WL 12177158 (N.D. Cal. June 26, 2013) ..................................................................................................................... 17

*Poirier v. Cubamax Travel, Inc.*, Case No. 18-23240-Altonaga (S.D. Fla. Oct. 9, 2018) ........... 17

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) .............................................. 3

*Satterfield v. Simon & Schuster, Inc.*, No. C06 2893 CW, 2010 WL 11489003 (N.D. Cal. Mar. 3, 2010) ............................................................................................................. 17

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012) ..... 11

*Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012) ...................................... 5

*Soukhaphonh v. Hot Topic, Inc.*, No. CV165124DMGAGRX (C.D. Cal. July 29, 2019) ........... 17

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) ............................ 13

*Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM (S.D. Fla. Mar. 19, 2019) ... 17

*Williams v. Bluestem Brands, Inc.*, No. 8:17-CV-1971-T-27AAS, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) ......................................................................................................... 20

**Statutes**

47 C.F.R. § 64.1200 ...................................................................................................... 3, 16

47 U.S.C. § 227 ......................................................................................................... 1, 3, 16

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... passim

**Treatises**

1 Newberg, Class Actions § 3.05 (3d ed. 1992) .......................................................... 5

2 Mclaughlin On Class Actions § 6:7 (8th ed. 2011) .................................................. 14

4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions § 11.25 (4th ed. 2002) ......... 13

Manual For Complex Litigation § 21.632 (4th ed. 2004) ....................................... 13, 20

## Statement of the Nature and Stage of this Proceeding

Lauren Davis ("Plaintiff") filed this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and on behalf of a nationwide class. Following over seven months of vigorously contested litigation, and as a result of extensive arm's-length negotiations—in part before experienced mediator Bruce Friedman, Esq.— Plaintiff and Mindshare Ventures L.L.C., d/b/a AtlasRTX ("AtlasRTX"), Trendmaker Homes DFW, L.L.C. ("Trendmaker DFW"), and Trendmaker Homes, Inc. ("Trendmaker Homes") (collectively "Defendants"), reached an agreement to resolve this matter.[1]

## Statement of Issues

This Court must now decide whether it should grant Plaintiff's unopposed requests that it: certify the class for settlement purposes; preliminarily approve the settlement as fair, reasonable, and adequate; appoint Plaintiff as the class representative, and Plaintiff's counsel as class counsel; approve and direct notice to class members; and, set a final fairness hearing.

## Summary of the Settlement

The settlement resolves this matter on behalf of the following class:

> All persons throughout the United States (1) to whom Trendmaker DFW or AtlasRTX, on behalf of Trendmaker DFW or Trendmaker Homes, sent, or caused to be sent, a text message, (2) directed to a number assigned to a cellular telephone service, (3) from May 30, 2015 through December 11, 2019, (4) using the AtlasRTX platform/services.

To compensate class members, Defendants will create a non-reversionary common fund in the amount of $1.3 million. Paid from the common fund will be: compensation to class members;

---

[1]   The settlement agreement and its exhibits—including a proposed long-form notice, a proposed postcard notice, a proposed claim form, a proposed preliminary approval order, and a proposed final approval order—are appended to the Declaration of Aaron D. Radbil, attached as Exhibit A.

the cost of notice to class members, and claims administration for class members; litigation costs and expenses, for which Plaintiff's counsel will petition this Court; reasonable attorneys' fees, calculated as a percentage of the common fund, for which Plaintiff's counsel will petition this Court; and an incentive award to Plaintiff, for which Plaintiff will petition this Court.

A third-party claims administrator will mail notice of the settlement directly to class members, together will a detachable claim form that class members can use to submit claims. The claims administrator will also establish a dedicated settlement website that provides information about the settlement, and through which class members can submit claims electronically. As well, the claims administrator will set up a toll-free number that provides information about the settlement, and through which class members can submit claims by telephone.

Each class member who submits a valid, approved claim will be entitled to a *pro rata* share of the non-reversionary common fund after deducting: the cost of notice to class members, and claims administration for class members; litigation costs and expenses, subject to this Court's approval; reasonable attorneys' fees, subject to this Court's approval; and an incentive award to Plaintiff, subject to this Court's approval.

Any class member who wishes to exclude himself or herself from the settlement can submit a request for exclusion. Likewise, any class member who wishes to object to the settlement can submit an objection.

Upon this Court's entry of a final judgment, Plaintiff and each non-excluded class member will release and forever discharge claims they have against Defendants under the TCPA and related state laws that regulate telemarketing or the use of automatic dialing equipment.

### The Telephone Consumer Protection Act

The TCPA makes it unlawful for "any person . . . to make any call . . . using any automatic telephone dialing system [("ATDS")] . . . to any telephone number assigned to a . . . cellular

2

telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).[2]

Noteworthy, given the facts underlying this matter, a text message is a "call" as defined by the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Arredondo v. Flexi Corp.*, No. 5:17-CV-4, 2017 WL 7796192, at *1 (S.D. Tex. Aug. 18, 2017) ("Making a call using an automatic telephone dialing system triggers responsibility under the TCPA regardless of whether the recipient answers. A text message to a cellular telephone qualifies as a 'call' for such purposes.").

Also significant, "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express *written* consent of the called party . . . ." 47 C.F.R. § 64.1200(a)(2).

"Prior express written consent," in turn, is defined as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

### Summary of Facts Underlying Plaintiff's Claims

In February 2019, Plaintiff received the following text message on her cellular telephone:

---

[2]     Unless otherwise indicated, all emphasis is added, and all internal citations and quotations are omitted.

> Hello Lauren, this is Trendmaker Homes and we are excited to announce that our Texas Sized Savings event is back! From now until 2/28/19 we are offering: 1/2 price earnest deposits, $5k in closing costs & increased savings on ALL quick move-in homes!
>
> Click below to view eligible homes, and text here or call Sydney at 972-734-8779 to schedule a VIP tour.
>
> http://go.atlasrtx.com/rd?eid=920741&a=ctac

When dialed, the telephone number included in the text message plays a recorded message that begins: "Thank you for calling Trendmaker Homes . . . ." ECF No. 1, ¶ 12.

Plaintiff did not, however, provide Defendants written consent to deliver advertising or marketing text messages to her cellular telephone number by using an ATDS. ECF No. 1, ¶ 25.

And Plaintiff is not alone in her experience with Defendants. Indeed, Defendants delivered text messages similar to the message Plaintiff received to 9,863 cellular telephone numbers during the class period. *See* Exhibit A, ¶ 49.

For their part, Defendants deny that they used an ATDS to send the text messages at issue, deny that the text messages were telemarketing in nature, deny that the text messages were sent without the requisite level of consent, and deny any liability under the TCPA.

## Argument

**I.   The class meets all requirements for certification under Rule 23.**

### A.   The TCPA claims at bar are well suited for class treatment.

As Judge Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v.*

*Turza*, 728 F.3d 682, 684 (7th Cir. 2013). And this remains true in the context of advertisement and text message claims under the TCPA. *See, e.g.*, *Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 308 (S.D. Fla. 2017) (certifying a class of "all persons in the United States (i) who received a text message (ii) on his or her cellular telephone (iii) from InstantCarOffer.com for Off Lease Only, Inc. (iv) sent using Instant Car Offer.com's systems (v) from a period of four (4) years prior to the filing of the initial Complaint, September 4, 2011, to the date of class certification"); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012) (certifying a class of "persons in the United States of America who were sent, to their cellular telephone numbers, at least one unsolicited text message that marketed a Papa John's branded product, good, or service through OnTime4U"); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 391 (N.D. Ohio 2012) (certifying a class "consisting of all persons sent Viking texts with an ATDS since February 1, 2011").

**B.  The class satisfies the requirements of Rule 23(a).**

For the class to be certified, it must first satisfy all requirements under Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

**1.  The class is so numerous that joinder of all members is impracticable.**

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Any class consisting of more than forty members should raise a presumption that joinder is impracticable." 1 Newberg, Class Actions § 3.05 at 3-25 (3d ed. 1992); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("Although the number of members in a proposed class is not determinative of whether joinder is impracticable, the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement."); *Boykin v. Georgia–Pacific Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983) (finding that numerosity requirement would not be met by a class with 20 members but was met

by a class with 317 members).

Here, the class includes approximately 9,863 members. *See supra* Summary of Facts. It is therefore sufficiently numerous that joinder is impracticable. *See Henderson v. Eaton*, No. CIV.A. 01-0138, 2002 WL 10464, at *1 (E.D. La. Jan. 2, 2002) (numerosity satisfied with estimated class size of at least 200 members); *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 408 (N.D. Miss. 2000) ("Numbering at least eighty and potentially numbering in the hundreds, this class is clearly so numerous that joinder of all members would be impracticable. Therefore, the court finds that the Plaintiffs have met the numerosity requirement.").

### 2. Common questions exist as to each class member.

"Commonality and typicality are not demanding tests." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 555 (S.D. Tex. 2005); *see also Walton*, 190 F.R.D. at 408 ("The Fifth Circuit has held that the threshold of commonality is not a high one."). "For the former, the putative class members need not have identical interests or claims, but only at least one issue, the resolution of which would affect all or a substantial number of class members." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. at 555; *see also In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) ("To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims."). Moreover, the commonality element is generally satisfied when "[d]efendants have engaged in a standardized course of conduct that affects all class members." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004).

This case presents a host of common questions. For example, whether Defendants delivered the text messages in question by using an ATDS is a common question. *See Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457, at *4 (D.N.M. June 5, 2018) ("Plaintiff identifies a number of common questions of law or fact: • whether the Aspect

Unified IP used to call all class member is an automatic telephone dialing system"); *Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2014 WL 11894430, at *3 (S.D. Fla. Sept. 29, 2014) (finding that "common questions . . . apt to drive the resolution of the case, includ[e] (1) whether [the defendant] placed the calls at issue; [and] (2) whether it did so using an automated dialing system or prerecorded or artificial voice").

As well, that each class member suffered the same injury and is entitled to the same statutorily mandated relief gives rise to another common question. *See Lavigne*, 2018 WL 2694457, at *4 ("Plaintiff identifies a number of common questions of law or fact: . . . . • whether the class suffered the same injury, receipt of call in violation of the TCPA."); *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) ("Here there is a common injury, resulting from receipt of the allegedly offending calls . . . . The Court likewise determines that there are questions of law or fact common to each class member.").

### 3. Plaintiff's claims are typical of the claims of class members.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see also Walton*, 190 F.R.D. at 409 ("Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."). "The test of typicality, like that of commonality, is not demanding." *In re Seitel, Inc. Sec. Litig.*, 245 F.R.D. 263, 270 (S.D. Tex. 2007).

Here, Plaintiff received the same type of text message as each class member, and was therefore harmed in the same way as each class member. *See supra* Summary of Facts. Plaintiff's

claims are therefore typical of the claims of the class members. *See Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 696 (S.D. Fla. 2015) ("The Court finds that the proposed class representative satisfies the typicality requirements because Plaintiff, like each of the class members, was purportedly sent the same fax and each class member's claim is based on the same legal theory and same set of facts as Plaintiff's claim."); *Cabrera*, 2014 WL 11894430, *4 ("The Court finds that Plaintiff's claims are typical of the proposed cellular-only class because his claims arise from the same practice—[the defendant's] use of LiveVox to place calls to cellular numbers—and are premised on the same TCPA violation.").

### 4. Plaintiff and her counsel will fairly and adequately protect the interests of class members.

Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "The purpose of this requirement is to uncover conflicts of interest between named parties and the class they seek to represent." *Chavez v. Plan Benefit Servs., Inc.*, No. AU-17-CA-00659-SS, 2019 WL 4254627, at *3 (W.D. Tex. Aug. 30, 2019). "While the burden in a class certification motion is on the Plaintiffs, the adequacy of the putative representatives and of Plaintiffs' counsel is presumed in the absence of specific proof to the contrary." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-130 (5th Cir. 2005).

Here, Plaintiff is capable of protecting, has protected, and will continue to protect, the interests of absent class members. *See* Declaration of Lauren Davis, attached as Exhibit B, ¶ 7. From the outset, Plaintiff has been, and remains, involved in this matter. She communicates regularly with her counsel, and is prepared to make all necessary decisions involving this case with class members' best interests in mind. *Id.* at ¶¶ 9-10.

As well, Plaintiff retained counsel experienced and competent in class action litigation, including that under the TCPA. *See* Exhibit A, ¶¶ 9-10. Indeed, courts have not only appointed

Plaintiff's counsel as class counsel in dozens of consumer protection class actions in the past few years alone, but many have also taken care to highlight the firm's wealth of experience and skill. *Id*. at ¶¶ 12-19.

### C.  The class satisfies the requirements of Rule 23(b).

After satisfying all requirements under Rule 23(a), the class, here, must then satisfy elements of Rule 23(b), commonly referred to as predominance and superiority.

### 1.  Questions common to class members predominate over any questions affecting only individual members.

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *Mullen*, 186 F.3d at 624. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This inquiry turns on "how a trial on the merits would be conducted if a class were certified." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008).

The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, to establish a violation of the TCPA Plaintiff and class members must demonstrate that Defendants delivered the subject text messages by using an ATDS, absent requisite consent. *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 728 (S.D. Tex. 2012). As such, "whether

[Defendants] used an automated telephonic dialing system to [deliver the subject text messages] and caused injuries to the class members is an issue that predominates over those that may be considered individualized." *Mohamed*, 320 F.R.D. at 316; *see also Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 (explaining that "[t]he facts necessary to establish liability [under the TCPA] relate to Defendant's common course of conduct and the transmissions of the [communications]," and finding that "common issues predominate over any individual issues that may arise"); *Gehrich*, 316 F.R.D. at 226 (noting that "[t]he common questions [including whether the defendant placed prerecorded or automated calls to cellular telephone numbers] are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues").

### 2. A class action is superior to other available methods for the fair and efficient adjudication of this matter.

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether a class action is superior, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id*.

In general, litigating TCPA claims as part of a class action is superior to litigating them in successive individual lawsuits. *See Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 247 (D. Ariz. 2019) ("The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual

putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. . . . Therefore, the Court finds that a class action is a superior method to adjudicate this matter."); *see also Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 ("[T]he Court finds that a class action is superior to other methods for adjudicating the putative class members' TCPA claims."). Here, the superiority of a class action is particularly compelling given that the class includes thousands of members.

As well, no one class member has an interest in controlling the prosecution of this action. Simply, the claims of all members of the proposed class are identical, as they arise from the same standardized conduct, and they result in uniform damages calculated on a per-violation basis. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ("This class action, which resolves the controversy more fairly and efficiently than a series of individual actions, satisfies Rule 23(b)(3)'s superiority requirement. Because the TCPA permits a maximum award of $500 absent a willful violation, each class member lacks a strong financial interest in controlling the prosecution of his action."); *see also Lavigne*, 2018 WL 2694457, at *8 ("Moreover, the complex nature of this TCPA action lends itself to the efficiencies of class certification. It would [be] inefficient to reinvent [the] wheel on approximately 30,000 separate cases. Moreover, the courts would be substantially burdened by 30,000 separate suits—or even a fraction of that.").

Furthermore, absent a class action, thousands of claims like Plaintiff's—all of which stem from Defendants' text messages—will likely go un-redressed. *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary

loss or $500). Individuals are therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute."); *Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) ("[R]esolution of the issues [under the TCPA] on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources.").

A class action is therefore the superior method to adjudicate all aspects of this controversy. *See Luther v. Convergent Outsourcing, Inc.*, No. 15-10902, 2016 WL 1698396, at *6 (E.D. Mich. Apr. 28, 2016) ("Here, where each individual class member's recovery would be small and the class size is large, combining identical claims into a single action is the superior and most efficient way to resolve the claims."); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) ("In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating the plaintiffs' claims under the FDCPA and TCPA.").

## II.   The settlement is fair, reasonable, and adequate, under Rule 23(e).

Rule 23(e) requires that a court preliminarily evaluate the fairness of a class action settlement:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification,

proposed settlement, and date of the final fairness hearing.

Manual For Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B.

Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002).

After the court makes a preliminary fairness evaluation, and notice has been issued, the

court must then hold a final fairness hearing to determine whether the proposed settlement is truly

fair, reasonable, and adequate. *See* Manual For Complex Litigation § 21.633-34; Newberg, §

11.25.

Considering as much, preliminary approval requires only that a court evaluate whether the

proposed settlement was negotiated at arm's-length and is within the range of possible litigation

outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness

process. *See* Manual For Complex Litigation § 21.632-33.

No matter, and with the understanding that a full fairness determination is not necessary at

this preliminary approval stage, the Fifth Circuit identified six factors for consideration in

analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and

likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery

completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible

recovery; and (6) the opinions of the class counsel, class representatives, and absent class

members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir.

2012).

As well, Rule 23(e) mandates consideration of several additional factors, including that the

class representatives and class counsel have adequately represented class members, and that the

settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate.

### A.  There is no fraud or collusion behind the settlement.

The parties agreed to settle this matter following weeks of negotiation that succeeded a mediation with Bruce Freidman, Esq.[3] Accordingly, the settlement is not the product of collusion, but rather the ultimate result of arms'-length negotiations facilitated by an experienced mediator. Significant, then, is that a settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion. *See* 2 Mclaughlin On Class Actions § 6:7 (8th ed. 2011); *accord In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012) ("any suggestion of fraud or collusion" regarding settlement was "baseless," as "the Settlement was reached only after many months of hard-fought negotiations").

### B.  The complexity, expense, and likely duration of litigation favors settlement.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are

---

[3]      "Bruce A. Friedman, Esq. is an accomplished dispute resolution professional who has mediated and settled a wide range of cases including class action matters and serves as an arbitrator and discovery referee. Mr. Friedman began his neutral career in 2011 following 37 years as a trial lawyer handling cases in the areas of insurance, class action, professional liability, business, real estate, and entertainment. He was lead trial counsel in dozens of jury trials, bench trials, and arbitrations. He routinely represented clients in high-stakes litigation. In 2013, Mr. Friedman was named by the *Daily Journal* as one of the top neutrals in California. He has been recognized by *Chambers USA* in insurance litigation and described as a "great strategist" with a broad commercial litigation practice. In 2012, Bruce was named as the Best Insurance Lawyer in Los Angeles by *Best Lawyers in America*." https://www.jamsadr.com/bruce-friedman/.

notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

Here, absent settlement, the parties would have had to continue with discovery, including multiple depositions; brief both class certification and merit-related issues; and, try any issues not resolved on summary judgment. Appeals would almost certainly have followed.

The settlement, however, provides immediate relief, and avoids the certainty of additional, expensive, and protracted litigation. *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation."); *Henderson*, 2002 WL 31415728, at *3 (following discovery, "several fundamental issues in the case remained in dispute: . . . . Resolving these questions through a trial and, ostensibly, an appeal, would likely be burdensome and costly.").

### C.  The stage of the proceedings supports preliminary approval of the settlement.

Plaintiff filed her original class action complaint on June 3, 2019. ECF No. 1. Thereafter she filed two amended complaints, respectively incorporating new information learned through discovery, and altering her claims accordingly. ECF Nos. 16, 34. For their part, Defendants filed a motion for a more definite statement, ECF No. 18, a motion to dismiss, ECF No. 19, and a motion to stay, ECF No. 19, each of which Plaintiff responded to in some manner. Moreover, leading up to mediation with Mr. Friedman, the parties focused their efforts on discovery specifically targeted to foster a resolution.

All of this, together, ensured that "counsel had an adequate appreciation of the merits of the case before negotiating." *Jenkins*, 303 F.R.D. at 303-304. The parties then consummated the settlement having a clear view towards the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class

Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### D. The probability of Plaintiff's success on the merits, the range of possible recovery, and the uncertainty of damages favor preliminary approval.

Courts are to consider "the likelihood and extent of any recovery from the defendants absent settlement." *Jenkins*, 300 F.R.D. at 304. That is, "[t]he settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case." *In re Pool Prods. Distribution Market Antitrust Litig.*, MDL No. 2328, 2015 WL 4875464, at *13 (E.D. La. Aug. 13, 2015) (preliminarily approving class action settlement).

Here, Plaintiff faced a number of significant merit-based hurdles. For example, Defendants argued that the AtlasRTX platform used to send the subject text messages to Plaintiff and class members is not an ATDS as defined by the TCPA. More specifically, Defendants suggested that the AtlasRTX platform cannot randomly or sequentially generate telephone numbers to be dialed, and therefore it is not an ATDS. As well, Defendants contended that the content, timing, scope, and recipient of any text message sent using the AtlasRTX platform must be determined and controlled by the user, and that this "human intervention" means that the AtlasRTX platform cannot be an ATDS. Of course, if the AtlasRTX platform is not an ATDS, the TCPA does not govern the text message giving rise to this matter, and thus could not provide class members any relief. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Additionally, Defendants argued that the text messages at issue were not sent to advertise or telemarket. If true, prior express *written* consent would not have been required to send the text messages; rather, simple prior express consent would have been sufficient. *Compare* 47 C.F.R. § 64.1200(a)(2) and 47 C.F.R. § 64.1200(f)(8) *with* 47 U.S.C. § 227(b)(1)(A)(iii). And this matters

because text messages sent in response to inquiries with Defendants—as Defendants allege many of the subject text messages were—would not be governed by the TCPA should they truly not have been sent to advertise or telemarket, a point that Plaintiff disputes.

No matter, and in the face of these hurdles, the settlement breaks down to approximately $132 per class member ($1.3 million ÷ 9,863 class members).[4] And this compares quite favorably with analogous advertising and telemarketing text message settlements under the TCPA, all of which various district courts approved.[5]

### E. The opinion of Plaintiff's counsel further supports preliminary approval of the settlement.

"The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein v. O'Neal, Inc.*, 705 F.

---

[4]    This unadjusted figure assumes that 100% of class members will submit a claim form, and does not account for any deductions. Experience, however, suggests that far less than 100% of class members will do so, and that the actual per-claimant recover will far exceed $132, even after deducting attorneys' fees, litigation and notice and administration costs, and an incentive award, from the common fund.

[5]    *See, e.g.*, *Soukhaphonh v. Hot Topic, Inc.*, No. CV165124DMGAGRX, ECF No. 255 (C.D. Cal. July 29, 2019) ($2 per person); *Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM, ECF No. 39 (S.D. Fla. Mar. 19, 2019) ($5); *Poirier v. Cubamax Travel, Inc.*, Case No. 18-23240-Altonaga (S.D. Fla. Oct. 9, 2018) ($7); *Halperin v. Youfit Health Clubs, LLC*, No. 18-61722-CIV, ECF No. 37 (S.D. Fla. May 29, 2019) ($7.50); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ($11.80); *Pimental v. Google Inc.*, No. 11-CV-02585-YGR, 2013 WL 12177158, at *3 (N.D. Cal. June 26, 2013) ($15); *Melito v. American Eagle Outfitters, Inc.*, No. 14-CV-2440, 2017 WL 3995619, at *1 (S.D.N.Y. Sept. 11, 2017) ($23); *Kazemi v. Payless Shoesource, Inc.*, No. C-09-5142 EMC, 2011 WL 13152859, at *1 (N.D. Cal. Sept. 6, 2011) ($25 merchandise certificate); *Mohamed v. Off Lease Only, Inc.*, No. 15-CV-23352-CIV, ECF No. 382, at *1 (S.D. Fla. June 27, 2019) ($50); *Marengo v. Miami Research Assocs., LLC*, No. 17-CV-20459-JLK, 2018 WL 2744606, at *1 (S.D. Fla. June 7, 2018) ($130); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS MDD, 2011 WL 6300050, at *1 (S.D. Cal. Dec. 15, 2011) ($131); *Ellison v. Steven Madden, Ltd.*, No. CV11-5935 PSG (AGRX), 2012 WL 12884916, at *5 (C.D. Cal. Sept. 25, 2012) ($150); *Satterfield v. Simon & Schuster, Inc.*, No. C06 2893 CW, 2010 WL 11489003, at *1 (N.D. Cal. Mar. 3, 2010) ($169).

Supp. 2d 632, 649 (N.D. Tex. 2010); *Henderson*, 2002 WL 31415728, at *4 ("Finally, the Court finds that the opinions of class counsel, class representatives, and absent class members weigh in favor of settlement. Counsel for both plaintiff and defendant concur that the settlement is fair."); *accord Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

Here, Plaintiff's counsel is highly experienced in class action litigation, particularly in cases under the TCPA. *See* Exhibit A, ¶¶ 9-10. And Plaintiff's counsel firmly believes that the settlement is fair, reasonable, adequate, and in the best interests of class members. *See id.* at ¶ 61.

### F. Plaintiff and her counsel and have adequately represented the class.

Plaintiff was, throughout this matter, committed to acting in the best interests of class members. She stayed updated on the case and spoke with her counsel regularly. Plaintiff also remained prepared to, and did, make all necessary decisions required of her in the best interests of the class members. Similarly, Plaintiff's counsel—who is experienced in complex litigation and has served as class counsel on numerous occasions—zealously litigated on behalf of Plaintiff and class members, and against sophisticated and experienced defense counsel. And in the end, with her counsel's guidance, Plaintiff obtained an excellent recovery for both herself and class members.

### G. The settlement treats class members equitably.

Rule 23(e)(2)(D) requires that a court confirm that a class action settlement treats all class members equitably. The Advisory Committee's Note to Fed. R. Civ. P. 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."

Here, all class members have the same claims. Correspondingly, the settlement provides that each participating class member will receive an equal portion of the settlement fund. Additionally, the release affects each class member in the same way.

### III.   The robust notice plan is more than sufficient.

Pursuant to Rule 23(e) a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, and after a competitive bid process, the parties agreed to a robust notice program to be administered by a well-respected third-party claims administrator, KCC Class Action Services, LLC ("KCC"). Through the notice program, KCC will use all reasonable efforts to provide direct mail notice to class members.

To start, KCC will identify and verify contact information for persons associated with the telephone numbers to which Defendants delivered the text messages in question. In doing so, KCC will run information through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. KCC will then send each person identified through this process, via U.S. mail, a postcard notice with a detachable claim form.

Separately, KCC will establish a dedicated settlement website, through which class members can review relevant documents filed with this Court, review the summary question-and-answer notice, and submit claims. In addition, KCC will establish a toll-free telephone number, through which class members can request additional information, have questions about the settlement answered, and submit claims.

To submit a valid claim, a class member will have to aver that Defendants delivered a text message to his or her cellular telephone number, between May 30, 2015 and December 11, 2019.

The ultimate goal of the notice program will be to make it as convenient as possible for deserving class members to learn of, and participate in, the settlement. *See Williams v. Bluestem Brands, Inc.*, No. 8:17-CV-1971-T-27AAS, 2019 WL 1450090, at *5 (M.D. Fla. Apr. 2, 2019) (approving similar notice plan in TCPA class action); *James*, 2016 WL 6908118, at *2 (same).

The notice program, therefore, complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of this action; (2) the essential terms of the parties' settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if a class member does not request exclusion; (4) the process regarding objections and exclusions, including the time and method for objecting or requesting exclusion, and that settlement class members may make an appearance through counsel; (5) information regarding Plaintiff's incentive award and his counsel's request for an award of attorneys' fees, costs, and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B); Manual For Complex Litigation § 21.312.

In short, the notice program ensures that class members' due process rights are amply protected. *See* Fed. R. Civ. P. 23(c)(2)(A).

## IV.   This Court should set a final fairness hearing.

The final step in the settlement approval process is a final fairness hearing, during which a court hears all evidence and argument necessary to finally evaluate the fairness of a settlement. Fed. R. Civ. P. 23(e)(2). After the final fairness hearing, the court then determines whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

Here, the parties respectfully request that this Court set a date for a final fairness hearing, at this Court's convenience, approximately four months after (and at least 105 days after) it preliminarily approves the parties' settlement.

## Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order—agreed to by all parties—certifying the class for settlement purposes; preliminarily approving the settlement as fair, reasonable, and adequate; appointing Plaintiff as the class representative, and Plaintiff's counsel as class counsel; approving and directing notice to class members; and, setting a final fairness hearing date.

Dated: February 14, 2020       Respectfully submitted,

*/s/ Aaron D. Radbil*
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Phone: (512) 803-1578
aradbil@gdrlawfirm.com

## CERTIFICATE OF SERVICE

I certify that on February 14, 2020, the foregoing document was filed with the Court using CM/ECF, which will send notification of such to all counsel of record.

*/s/ Aaron D. Radbil*
Aaron D. Radbil