| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| | | |
|---|---|---|
| Lauren Davis, *on behalf of herself and others similarly situated*, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 4:19-cv-1961 |
| Mindshare Ventures LLC, d/b/a AtlasRTX, Trendmaker Homes DFW, L.L.C., and Trendmaker Homes, Inc., | § § § § | |
| Defendants. | § § | |

**MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARD**

## Introduction

Lauren Davis ("Plaintiff"), together with Mindshare Ventures L.L.C., d/b/a AtlasRTX, Trendmaker Homes DFW, L.L.C., and Trendmaker Homes, Inc. (collectively, "Defendants"), agreed to resolve this matter for the benefit of a nationwide class. Specifically, the parties agreed that Defendants will create a non-reversionary common fund in the amount of $1.3 million to compensate 9,863 class members for claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See* ECF No. 44-1 at 14-48. This Court preliminarily approved the parties' settlement on June 12, 2020. ECF No. 47. And the court-appointed claims administrator disseminated court-approved class notice on July 10, 2020. *See* Declaration of Aaron D. Radbil, ¶ 9, attached as Exhibit A.

In line with the class notice, class counsel now seeks an award of attorneys' fees equal to one-third of the common fund, or $433,333, as well as reimbursement of litigation costs and expenses totaling $7,835.51. Additionally, and also in line with the notice, Plaintiff seeks an incentive award in the amount of $5,000.

Class counsel's and Plaintiff's requests are reasonable, justified, and in line with awards approved in analogous TCPA class actions. Moreover, following notice to class members, to date, no class member has objected to any part of the settlement or to the requests for attorneys' fees, costs, expenses, and an incentive award.

Thus, there is no opposition from any class member or from Defendants. The deadline for class members to object is August 26, 2020.

**Argument**

I. **Class counsel's request for attorneys' fees in the amount of one-third of the common fund is reasonable and justified.**

"The United States Supreme Court has held that the application of the percentage method is proper for determination of a reasonable fee award in common fund cases." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 746 (S.D. Tex. 2008) (Harmon, J.) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)). Not surprising, then—given its advantages over the lodestar approach—"[m]ost courts use the percentage of the fund method in awarding fees in common fund class actions." *Di Giacomo v. Plains All Am. Pipeline*, No. CIV.A.H-99-4137, 2001 WL 34633373, at *5-7 (S.D. Tex. Dec. 19, 2001) (Rosenthal, J.) (outlining "advantages of the percentage fee method over the lodestar method in common fund cases," and collecting cases from "[n]umerous district courts in the Fifth Circuit [that] have applied the percentage fee method to common fund cases.")

Court in the Fifth Circuit may also use "the *Johnson* framework . . . to ensure that the fee awarded [is] reasonable." *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2014 WL 7332551, at *6 (N.D. Tex. Nov. 12, 2014), *report and recommendation adopted in part,* No. 3:11-CV-2743-O, 2014 WL 7336889 (N.D. Tex. Dec. 24, 2014). That is, courts may "use[] the percentage method to establish a benchmark fee and then check[] this amount against a reasonableness test based on consideration of the *Johnson* factors." *Id*. at *6.

A. **A benchmark attorneys' fee award of one-third of the common fund is appropriate.**

"Historically, fee awards in common fund cases . . . were computed based upon a percentage of the fund, typically in the 25% to 33% range." *In re Prudential–Bache Energy Income P'ship*, No. MDL 888, 1994 WL 150742, at *1 (E.D. La. Apr.14, 1994). And while "[t]he

majority of common fund fee awards [across the country] fall between twenty and thirty percent[,] [i]t is not unusual, however, for district courts in the Fifth Circuit to award percentages of approximately one third." *In re Harrah's Entm't, Inc.*, No. CIV. A. 95-3925, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998); *see also Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 4:17-CV-3852, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) (Hoyt, J.) (describing one-third of a settlement fund as "an oft-awarded percentage in common fund class action settlements in this Circuit"); *Burford v. Cargill, Inc.*, No. 05–0283, 2012 WL 5471985, *5 (W.D. La. Nov. 8, 2012) ("a review of analogous precedent indicates that an award of one-third of the common fund is reasonable and typical"); *see, e.g., In re EZCORP, Inc. Sec. Litig.*, No. 1:15-CV-00608-SS, 2019 WL 6649017, at *2 (W.D. Tex. Dec. 6, 2019) (awarding one-third of a $4.875 million common fund in attorneys' fees); *Parmelee v. Santander Consumer USA Holdings Inc.*, No. 3:16-CV-00783-K, 2019 WL 2352837, at *1 (N.D. Tex. June 3, 2019) (awarding one-third of a $3,166,667 common fund in attorneys' fees); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *12-13 (N.D. Tex. Apr. 25, 2018) (awarding one-third of a settlement fund); *Hill v. Hill Bros. Constr. Co., Inc.*, No. 3:14-CV-213-SA-RP, 2018 WL 280537, at *3 (N.D. Miss. Jan. 3, 2018) (awarding one-third of an $850,000 common fund in attorneys' fees); *Frost v. Oil States Energy Servs.*, No. 4:15–cv–1100, 2015 WL 12780763, at *2 (S.D. Tex. Nov. 19, 2015) (awarding one-third of a settlement fund); *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 2015 WL 4528880, at *23 (E.D. La. July 27, 2015) (same); *Campton v. Ignite Rest. Grp., Inc.*, No. 4:12-cv-2196, 2015 WL 12766537, at *3 (S.D. Tex. June 5, 2015) (same); *Jenkins v. Trustmark Nat'l Bank,* 300 F.R.D. 291, 307 (S.D. Miss. 2014) (same);  *In re Combustion, Inc.*, 968 F. Supp. 1116, 1139-40 (W.D. La. 1997) (awarding 36% of a settlement fund).

And this analysis remains the same when limited to class actions under the TCPA. *See, e.g.*, *Fairway Med. Ctr., L.L.C. v. McGowan Enters., Inc.*, No. CV 16-3782, 2018 WL 1479222, at *1 (E.D. La. Mar. 27, 2018) (awarding one-third of a $3,250,000 common fund in attorneys' fees); *Jefferson Radiation Oncology, L.L.C. v. Advanced Care Scripts, Inc.*, No. CV 15-1399, 2016 WL 9446129, at *2 (E.D. La. Dec. 6, 2016) (awarding $3,052,500 in attorneys' fees, equal to one-third of the $9,250,000 common fund) (*see also* ECF Nos. 86-1; 96); *Accounting Outsourcing, L.L.C. v. Verizon Wireless Pers. Commc'ns, L.P.*, No. CIV. A. 03-CV-161, 2007 WL 7087615, at *2 (M.D. La. Aug. 2, 2007) (awarding $2,314,328 in attorneys' fees, equal to 36.5% of a $6,340,625 common fund).

A benchmark award of one-third of the common fund here is therefore appropriate.[1]

**B. The *Johnson* factors support an award of attorneys' fees in the amount of one-third of the common fund.**

The reasonableness of such a benchmark award is confirmed by a *Johnson* analysis. The *Johnson* factors are: the amount involved and the results obtained; the time and labor required; the

---

[1]      Even if—for the sake of argument—a benchmark attorneys' fee award of something less than one-third of the common fund is appropriate, an upward adjustment to one-third of the common fund is justified. "When using the lodestar method, courts typically apply multipliers ranging from one to four. . . . In contingency fee cases, this multiplier is necessary to reflect the possibility of no recovery." *In re Harrah's Entm't, Inc.*, 1998 WL 832574, at *5. In short, attorneys "should be compensated for the risk [they] took in advocating [a] case on a contingent basis and for the delay in [their] compensation." *Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 813 (W.D. Tex. 2006) (granting "an upward adjustment based on this factor"); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988) ("A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."), *aff'd,* 899 F.2d 21 (11th Cir. 1990) (internal citation omitted). Here, even if a benchmark attorneys' fee award of something less than one-third of the common fund is appropriate, an upward adjustment to one-third of the common fund is justified. *Accord infra* Argument §§ I.B.1-10 (discussing the *Johnson* factors as applicable to this matter).

4

novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the experience, reputation, and ability of the attorneys; the undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

But "even though it is apparent that the *Johnson* factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered." *In re Combustion, Inc.*, 968 F. Supp. 1116, 1135 (W.D. La. 1997). "This is particularly so in a common fund situation because not all *Johnson* factors are applicable." *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2014 WL 7332551, at *8 (N.D. Tex. Nov. 12, 2014), *report and recommendation adopted in part,* No. 3:11-CV-2743-O, 2014 WL 7336889 (N.D. Tex. Dec. 24, 2014) (quoting *In re Harrah's Entm't, Inc.*, 1998 WL 832574 at *4 (in turn, quoting *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993)))).

### 1.  Class counsel obtained an excellent result.

The "most important factor" in the *Johnson* analysis is "the result obtained." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491 n.31 (5th Cir. 2001); *see also St. Stephen's Missionary Baptist Church v. Taylor*, No. CIV. A. 05-294, 2008 WL 4057162, at *3 (E.D. La. Aug. 29, 2008) ("The most critical factor in determining the reasonableness of an attorney's fee award 'is the degree of success [or result] obtained.'") (citing *Giles*, 245 F.3d at 491 n.31); *accord In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 351 (N.D. Ga. 1993) ("The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel.").

Here, in the face of many significant legal hurdles, *see infra* Argument §§ I.B.3; I.B.7, class counsel obtained an excellent result for class members. To be sure, the settlement compares quite favorably, on a per-class member basis, to similar and recently approved TCPA class action settlements. More specifically, the raw, per-class member value of the settlement—approximately $132—exceeds, by multiples, the value of many analogous advertising and telemarketing text message class action settlements under the TCPA, all of which various district courts approved as fair, reasonable, and adequate. *See, e.g.*, *Soukhaphonh v. Hot Topic, Inc.*, No. CV165124DMGAGRX, ECF No. 255 (C.D. Cal. July 29, 2019) ($2 per class member); *Mohamed v. Off Lease Only, Inc.*, No. 15-CV-23352-CIV, ECF Nos. 378, 382 (S.D. Fla. June 27, 2019) ($50 per class member in claims-made settlement); *Halperin v. Youfit Health Clubs, LLC*, No. 18-61722-CIV, ECF No. 37 (S.D. Fla. May 29, 2019) ($7.50 per class member); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ($11.80 per class member); *Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM, ECF No. 39 (S.D. Fla. Mar. 19, 2019) ($5 per class member); *Poirier v. Cubamax Travel, Inc.*, No. 18-23240-Altonaga, ECF No. 51 (S.D. Fla. Oct. 9, 2018) ($7 per class member); *Melito v. American Eagle Outfitters, Inc.*, No. 14-CV-2440, 2017 WL 3995619, at *1 (S.D.N.Y. Sept. 11, 2017) ($23 per class member); *Pimental v. Google Inc.*, No. 11-CV-02585-YGR, 2013 WL 12177158, at *3 (N.D. Cal. June 26, 2013) ($32 per class member); *Kazemi v. Payless Shoesource, Inc.*, No. C-09-5142 EMC, 2011 WL 13152859, at *1 (N.D. Cal. Sept. 6, 2011) ($25 merchandise certificate per class member).

Also important, the settlement provides class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699

(S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (stating that since each class member is unlikely to recover more than a small amount, they are unlikely to bring individual suits under the TCPA). Thus, because of the settlement, class members will receive money they otherwise would have likely never pursued on their own.

At bottom, the settlement constitutes an excellent result for class members, and amply supports a request for an award of attorneys' fees in the amount of one-third of the common fund. *Accord Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding a cash recovery of $24 per claimant in a TCPA class action—well below the expected per-claimant recovery here—to be "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

### 2.   The time and labor required to resolve this matter were significant.

When using the percentage-of-the-fund method, a court need "not conduct a detailed analysis of charged hours and hourly rates," as doing so "would undermine the utility of the percentage fee method." *In re Harrah's Entm't, Inc.*, 1998 WL 832574, at *5. This is, in part, because "overly emphasiz[ing] the amounts of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services." *Id.*; *see also, e.g.*, *Di Giacomo*, 2001 WL 34633373, at *10 ("This court will not conduct a detailed analysis of charged hours and hourly rates. To do so would undermine the utility of the

percentage fee method."). Nonetheless, class counsel expended a significant amount of time litigating this case in order to reach the settlement. *See* Exhibit A, ¶¶ 13-18; *accord* ECF No. 44-1 at 9-10 (summarizing the procedural history of this matter). And additional counsel for Plaintiff spent time on this matter as well. *See* Declaration of David Almeida, attached as Exhibit C, ¶ 8. Given as much, this factor favors approval of the requested fee.

### 3.   The questions underlying this matter were both difficult and novel.

This biggest legal question underlying this matter was not only difficult, but is the subject of a circuit court split that the Supreme Court recently agreed to resolve. *See generally Facebook, Inc. v. Duguid*, No. 19-511. In particular, Defendants argued that the AtlasRTX platform used to send the subject text messages to Plaintiff and class members is not an automatic telephone dialing system ("ATDS") as defined by the TCPA. More precisely, Defendants suggested that the AtlasRTX platform cannot randomly or sequentially generate telephone numbers to be dialed, and therefore it is not an ATDS.

Defendants based their argument on an interpretation of the TCPA about which circuit courts are divided. *Compare Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) (holding a device that makes calls from a stored list can be an ATDS), *and Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 281 (2d Cir. 2020) (same), *with Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020) (holding an ATDS must randomly or sequentially generate numbers called), *and Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020) (same). Given this split, the Supreme Court recently granted a petition for certiorari in *Duguid*. *See* https://www.supremecourt.gov/docket/docketfiles/html/public/19-511.html (noting that the petition was granted on the question of "[w]hether the definition of ATDS in the TCPA

encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'").

Considering as much, whether the AtlasRTX platform is an ATDS—and thus, whether the TCPA governs the text messages giving rise to this matter—is not only difficult, but has yet to be answered with any real certainty. Moreover, the Fifth Circuit has not yet weighed in on the issue, making it largely novel as it relates to this matter.

Further, Supreme Court jurisprudence during the pendency of this action posed an existential threat to Plaintiff's and the class members' claims. *See infra* Argument, § I.B.7 (discussing *Barr v. Am. Ass'n of Political Consultants, Inc.*). Class counsel successfully navigated these varied and significant risks in obtaining meaningful relief for settlement class members.

### 4. Class counsel relied on particular skill and experience in performing the legal services required.

"[T]he prosecution and management of a complex national class action requires unique legal skills and abilities." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012 WL 12540344, at *4 (N.D. Ga. Oct. 26, 2012) (internal citation omitted); *see also Swift v. BancorpSouth Bank*, No. 1:10-CV-00090-GRJ, 2016 WL 11529613, at *17 (N.D. Fla. July 15, 2016) (same); *In re Omnivision Techs., Inc. Sec. Litig.*, No. 5:11-CV-05235-RMW, 2015 WL 3542413, at *2 (N.D. Cal. June 5, 2015) (same); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010) (same).

This action is no different, and class counsel relied on their skill and experience in litigating and negotiating the parties' settlement. Indeed, class counsel have a particular set of skills honed over years of practice, during which they were appointed as class counsel in over a dozen class actions under the TCPA alone. *See, e.g., Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 247 (D. Ariz. 2019); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV, 2018 WL 3145807 (S.D. Fla. June

26, 2018); *Martinez v. Medicredit, Inc.*, No. 4:16-cv-01138 ERW, ECF No. 95 (E.D. Mo. Dec. 15, 2017); *Johnson v. NPAS Solutions, LLC*, No. 9:17-CV-80393, 2017 WL 6060778 (S.D. Fla. Dec. 4, 2017); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 1:15-cv-01058-TWT, ECF No. 80 (N.D. Ga. Nov. 8, 2017); *Prather v. Wells Fargo Bank, N.A.*, No. 1:15-cv-04231, ECF No. 55 (N.D. Ga. Aug. 31, 2017); *Johnson v. Navient Solutions, Inc.*, No. 1:15-cv-00716-LJM-MJD, ECF No. 177 (S.D. Ind. July 13, 2017); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T23JSS, 2017 WL 2472499 (M.D. Fla. June 5, 2017); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 2:15-CV-01175-JEO, 2017 WL 1034201 (N.D. Ala. Mar. 17, 2017); *Cross v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01270-RWS, ECF No. 103 (N.D. Ga. Feb. 10, 2017); *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, ECF No. 90 (N.D. Ga. Jan. 30, 2017); *Prater v. Medicredit, Inc.*, No. 4:14-cv-00159-ERW, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-cv-00130-PJK-RHS, 2015 WL 5704016 (D.N.M. Sept. 23, 2015); *Ritchie v. Van Ru Credit Corp.*, No. 2:12–CV–01714–PHX–SM, 2014 WL 3955268 (D. Ariz. Aug. 13, 2014). Quite significantly, the combined recovery for consumers resulting from these matters well exceeds $100 million.

As well, in just the past several years, class counsel have been appointed as class counsel in over three dozen other consumer protection class actions across the country. *See, e.g.*, *Leboeuf v. Forster & Garbus LLP*, No. 2:19-cv-00845-WBV-JVM, 2020 WL 1283096 (E.D. La. Mar. 13, 2020); *Whatley v. TRS Recovery Servs., Inc.*, No. 4:17-cv-00133-ALM, ECF No. 43 (E.D. Tex. Apr. 4, 2018); *Dickens on behalf of estate of Dickens v. GC Servs. Ltd. P'ship*, 336 F. Supp. 3d 1369 (M.D. Fla. 2018); *Kagno v. Bush Ross, P.A.*, No. 8:17-cv-1468-T-26AEP, 2017 WL 6026494 (M.D. Fla. Dec. 4. 2017); *Johnston v. Kass Shuler, P.A.*, No. 8:16-cv-03390-SDM-AEP, 2017 WL 1231070 (M.D. Fla. Mar. 29, 2017); *Jallo v. Resurgent Capital Servs., L.P.*, No. 4:14-cv-00449,

2017 WL 914291 (E.D. Tex. Mar. 7, 2017); *Macy v. GC Servs. Ltd. P'ship*, No. 3:15-cv-00819-DJH-CHL, 2017 WL 489420 (W.D. Ky. Feb. 6, 2017); *Rhodes v. Nat'l Collection Sys., Inc.*, 317 F.R.D. 579 (D. Colo. 2016); *McCurdy v. Prof'l Credit Serv.*, No. 6:15-cv-01498-AA, 2016 WL 5853721 (D. Or. Oct. 3, 2016); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016); *Globus v. Pioneer Credit Recovery, Inc.*, No. 15-CV-152V, 2016 WL 4069285 (W.D.N.Y. July 27, 2016); *McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337 (S.D. Miss. 2015); *Rhodes v. Olson Assocs., P.C., d/b/a Olson Shaner*, 83 F. Supp. 39 1096 (D. Colo. 2015); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644 (M.D. Fla. 2015); *Donnelly v. EquityExperts.org, LLC*, No. 13-10017, 2015 WL 249522 (E.D. Mich. Jan. 14, 2015).

Furthermore, Mr. Radbil's (Plaintiff's individual counsel of record) notable appellate decisions in the consumer protection context are numerous. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529 (11th Cir. 2017); *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068 (9th Cir. 2016); *Lea v. Buy Direct, L.L.C.*, 755 F.3d 250 (5th Cir. 2014); *Payne v. Progressive Fin. Servs.*, Inc., 748 F.3d 605 (5th Cir. 2014); *Stout v. FreeScore, LLC*, 743 F.3d 680 (9th Cir. 2014); *Yunker v. Allianceone Receivables Mgmt.*, Inc., 701 F.3d 369 (11th Cir. 2012); *Guajardo v. GC Servs., LP*, No. 11-20269, 2012 WL 5419505 (5th Cir. Nov. 7, 2012); *Ponce v. BCA Fin. Serv., Inc.*, 467 F. App'x 806, 809 (11th Cir. 2012); *Mady v. DaimlerChrysler Corp.*, 59 So. 3d 1129 (Fla. 2011); *Talley v. U.S. Dep't. of Agric.*, 595 F. 3d 754 (7th Cir. 2010), *reh'g en banc granted, opinion vacated* (June 10, 2010), *on rehearing en banc* (September 24, 2010), *decision affirmed*, No. 09-2123, 2010 WL 5887796 (7th Cir. Oct. 1, 2010); *Oppenheim v. I.C. Sys., Inc.*, 627 F. 3d 833 (11th Cir. 2010).

In sum, class counsel relied on a wealth of particular skill and experience in obtaining the excellent result they did for class members.

**5.   Acceptance of this matter precluded class counsel from taking on other employment.**

"[S]ubstantial and concentrated time investment by plaintiffs' counsel would tend to preclude other lucrative opportunities, thus warranting a higher percentage of the fund." *Columbus Drywall & Insulation, Inc*., 2008 WL 11234103, at *2. This is the case here, as class counsel have expended a significant amount of time to ultimately obtain the results they achieved for the class. *See* ECF No. 44-1 at 9-10; *accord Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("Because of the number of hours that class counsel have been required to devote to this case, class counsel necessarily were precluded from handling other litigation matters during that time.").

Here, three of class counsel's five full-time attorneys each spent over 50 hours on this matter. This demonstrates that class counsel necessarily limited their ability to work on other cases. *See Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *21 (S.D. Tex. Jan. 23, 2015) (Rosenthal, J.) ("By accepting this case, class counsel necessarily limited their ability to work on other cases. Four of Cohen Milstein's seven-lawyer Employee Benefits Practice Group spent more than 50 hours on this case.").

**6.   One-third of the common fund is a customary fee in TCPA cases.**

Numerous courts have awarded attorneys' fees in the amount of one-third of the common fund in TCPA class actions. *See, e.g., Hanley v. Tampa Bay Sports & Entm't LLC*, No. 819CV00550CEHCPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding "a slight increase from the one-third benchmark"); *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2019 WL 7066834, at *7 (M.D.N.C. Dec. 23, 2019) (awarding one-third of the common fund); *Sheean v. Convergent Outsourcing, Inc.*, No. 218CV11532GCSRSW, 2019 WL 6039921, at *4 (E.D. Mich. Nov. 14, 2019) (awarding one-third of the TCPA and FDCPA common

funds); *Charvat v. Valente*, No. 12-CV-05746, 2019 WL 5576932, at *11 (N.D. Ill. Oct. 28, 2019) (awarding attorney's fees of 33.99% of the common fund); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (awarding one-third of the common fund); *West v. Cal. Serv. Bureau, Inc.*, No. 4:16-cv-03124-YGR, ECF No. 128 (N.D. Cal. Jan. 23, 2019) (awarding one-third of the common fund); *Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 3:15-CV-2673, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (awarding one-third of the common fund); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 807 (N.D. Ill. 2015) (awarding 36% of the first $10 million); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (awarding 36% of the common fund); *Prater v. Medicredit, Inc.*, No. 4:14-CV-00159-ERW, 2015 WL 8331602, at *3 (E.D. Mo. Dec. 7, 2015) (awarding one-third of the common fund); *Soto v. The Gallup Org.*, No. 13-cv-61747, ECF No. 95 (S.D. Fla. Nov. 24, 2015) (awarding one-third of the common fund, inclusive of costs); *Allen v. JPMorgan Chase Bank, N.A.*, No. 13-cv-8285, ECF No. 93 (N.D. Ill. Oct. 21, 2015) (awarding 33% of the common fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, No. 13-cv-21016, ECF No. 95 (S.D. Fla. June 24, 2015) (awarding one-third of the common fund); *Hageman v. AT&T Mobility LLC, et al.*, No. 1:13-cv-50, ECF No. 68 (D. Mont. Feb. 11, 2015) (awarding 33% of the common fund); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% of the common fund); *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215, ECF No. 63 (N.D. Ill. Jan. 16, 2014) (awarding more than one-third of the common fund); *Cummings v Sallie Mae*, No. 1:12-cv-9984, ECF No. 91 (N.D. Ill. May 30, 2014) (awarding 33% of the common fund, inclusive of costs); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612, ECF No. 86 (N.D. Ill. Dec. 23, 2013) (awarding 33% of the common fund, inclusive of costs); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-1925, ECF No. 243 (N.D. Ill. June 21, 2013)

(awarding 33% of the common fund, inclusive of costs); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-5456, ECF No. 424 (N.D. Ill. Oct. 21, 2011) (awarding 33% of the common fund, plus costs); *Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531, ECF No. 67 (S.D. Ill. Sept. 8, 2010) (awarding one-third of the common fund, plus costs); *Holtzman v. CCH*, No. 1:07-cv-7033, ECF No. 33 (N.D. Ill. Sept. 30, 2009) (awarding 33% of the common fund, inclusive of costs).

### 7. Class counsel litigated this matter on a contingent basis.

"Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award." *Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *3 (quoting *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992)). Indeed, even in ordinary cases "uncertain is the outcome," and the corresponding risk taken by counsel in connection with contingent fee arrangements—no assurance of payment—warrants a higher percentage of the fund. *Id*. In the context of class actions, the inherent risk is multiplied:

> In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants an appropriate fee. The risks are inherent in financing and prosecuting complex litigation of this type, but Class Counsel undertook representation with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Only the most experienced plaintiffs' litigation firms would risk the time and expense involved in bringing this Action in light of the possibility of a recovery at an uncertain date, or of no recovery at all.

*Simpson v. Citizens Bank*, No. 212CV10267DPHRSW, 2014 WL 12738263, at *7 (E.D. Mich. Jan. 31, 2014).

Notably, the risk taken by class counsel was real, as opposed to hypothetical. This is, in part, because during the pendency of this case—and at the time the parties agreed to resolve this matter—the Supreme Court, in *Barr v. Am. Ass'n of Political Consultants, Inc.*, was considering

the constitutionality of the TCPA as a whole. No. 19-631, 2020 WL 3633780 (U.S. July 6, 2020). And if the Court would have found the TCPA to be unconstitutional, Plaintiff's and class members' claims would have suddenly ceased to exist—extinguishing any hope of a recovery. Ultimately, the Court did not find the TCPA unconstitutional, but instead severed a portion of the statute not at issue here. In other words, the Court "conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id*. at *2 (Kavanaugh, J.). Stated yet another way, the Court "sever[ed] the 2015 government-debt exception and le[ft] in place the longstanding robocall restriction." *Id*. at *13.

Here, Plaintiff entered into a contingent attorneys' fee agreement with class counsel. Exhibit A, ¶ 10. The agreement permitted class counsel to apply to this Court for an award of attorneys' fees in the event that a common fund was established for the benefit of the class. *Id*.

Thus, that the attorneys' fee arrangement in this case was contingent "weighs in favor of the requested attorneys' fees award, because '[s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered.'" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *see Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1215 (S.D. Fla. 2006) ("This factor weighs heavily in favor of a 31 and 1/3% percentage fee for Class Counsel because the fee in this action has been completely contingent."); *accord Been v. O.K. Indus., Inc.*, No. CIV–02–285–RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.").

**8.   This matter was undesirable to many attorneys.**

That class counsel worked for a significant period of time, absent any promise of payment for their efforts, makes this matter undesirable to many attorneys. *See Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *4 (explaining that the prospect of expending significant time and money with no assurance of payment, to litigate a case against well-represented defendants, would deter many lawyers from assuming representation). And given the uncertainty of the then-pending *Barr* decision, as well as the potential risks associated with the currently-pending *Duguid* case, the risks of extensive delay or potentially adverse Supreme Court rulings further reduced the potential appeal of this matter.

So, although class counsel ultimately obtained a result that any attorney should be proud of, the road leading to a resolution was paved with quantities of time and money that would deter many attorneys from accepting this matter. And this is especially true given the quality of legal representation that Defendants obtained in this matter.

**9.   Class counsel have a great deal of experience and an excellent reputation.**

Class counsel have a wealth of experience gained from litigating class actions under the TCPA. *See supra* at Argument § I.B.4. In fact, multiple district courts have commented on class counsel's useful knowledge, excellent reputation, and experience in connection with class action litigation.

For example, in *Schwyhart*, Judge John E. Ott, Chief Magistrate Judge of the Northern District of Alabama, stated upon granting final approval of a TCPA settlement:

> I cannot reiterate enough how impressed I am with both your handling of the case, both in the Court's presence as well as on the phone conferences, as well as in the written materials submitted. . . . I am very satisfied and I am very pleased with what I have seen in this case. As a judge, I don't get to say that every time, so that is quite a compliment to you all, and thank you for that.

16

No. 2:15-cv-1175-JEO (N.D. Ala. Mar. 15, 2017).

In *Ritchie*, Judge Stephen McNamee, Senior U.S. District Court Judge for the District of

Arizona, stated upon granting final approval of a TCPA settlement:

> I want to thank all of you. It's been a pleasure. I hope that you will come back and
> see us at some time in the future. And if you don't, I have a lot of cases I would like
> to assign you, because you've been immensely helpful both to your clients and to
> the Court. And that's important. So I want to thank you all very much.

Case No. CIV-12-1714 (D. Ariz. July 21, 2014).

In *McWilliams*, Judge Carlton W. Reeves of the Southern District of Mississippi described

class counsel as follows:

> More important, frankly, is the skill with which plaintiff's counsel litigated this
> matter. On that point there is no disagreement. Defense counsel concedes that her
> opponent—a specialist in the field who has been class counsel in dozens of these
> matters across the country—'is to be commended for his work' for the class, 'was
> professional at all times' . . . , and used his 'excellent negotiation skills' to achieve
> a settlement fund greater than that required by the law.

> The undersigned concurs . . . Counsel's level of experience in handling cases
> brought under the FDCPA, other consumer protection statutes, and class actions
> generally cannot be overstated.

No. 3:15-CV-70-CWR-LRA, 2017 WL 2625118, at *3 (S.D. Miss. June 16, 2017).

Similarly, in *Roundtree*, Judge James D. Whittemore of the Middle District of Florida

wrote, in certifying three separate classes and appointing class counsel: "Greenwald [Davidson

Radbil PLLC] has been appointed as class counsel in a number of actions and thus provides great

experience in representing plaintiffs in consumer class actions." 304 F.R.D at 661.

As well, Judge Steven D. Merryday of the Middle District of Florida wrote in appointing

class counsel in *James* that "Michael L. Greenwald, James L. Davidson, and Aaron D. Radbil of

Greenwald Davidson Radbil PLLC, each . . . has significant experience litigating TCPA class

actions." No. 8:15-cv-2424-T23JSS, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016).

In *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, Judge C. Darnell Jones II of the Eastern District of Pennsylvania took care to point out that class counsel was appointed "precisely because of their expertise and ability to represent the class in this matter." No. 15-2460, 2016 WL 4766079, at *5 (E.D. Pa. Sept. 13, 2016).

And in *Donnelly*, Judge Terrence G. Berg of the Eastern District of Michigan stated upon approving an FDCPA class action settlement and appointing class counsel:

> [W]e see a fair number of FDCPA cases that are not necessarily at this level of sophistication or seriousness but I think that the—both sides appear to have really approached this with a positive attitude in trying to reach a settlement that from what I can see, appears to be the right thing to do in a reasonable and appropriate way.

No. 13-10017, at 16 (E.D. Mich. Jan. 14, 2015).

### 10. Additional factors support class counsel's request for an award of attorneys' fees in the amount of one-third of the common fund.

"Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.'" *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217. This is particularly important here, where, as previously noted, *see supra* Argument § I.B.1, damages awards under the TCPA—a statute that does not include a fee-shifting provision—are often too small to incentivize individual actions. And given such a circumstance, "courts treat successfully fulfilling [the private attorney general role] as a . . . factor when awarding class counsel attorneys' fees." *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217 (citing *Ressler*, 149 F.R.D. at 657 (noting that when class counsel act as private attorneys general, "public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions")).

The public policy fostered by the private attorney general role is, however, frustrated where a large defendant has the ability to overwhelm, for example, the small-firm plaintiff's lawyers who

typically represent consumers in actions under the TCPA. This is a reality that results from the fact that, as noted above, *see supra* Argument § I.B.7, class counsel were required to risk a significant amount of time, as well as out-of-pocket costs and expenses, to reach the result obtained. And "[u]nless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct." *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217.

Accordingly, a contingent attorneys' fee award that amounts to one-third of the common fund is appropriate where "absent an award of [such fees] . . . the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interests of those lawyers who would prefer to take minor sums to serve their own self interest rather than obtaining real justice on behalf of their injured clients." *Id*. at 1217-18 (citing John J. Coffee, Jr., *Rescuing the Private Attorney General: Why the Model of the Lawyer as Bounty Hunter is Not Working*, Maryland Law Review, 216, 225-26 (1983), for the principle that "the private attorney general provides an important mechanism 'to enforce the federal antitrust and securities laws, to challenge corporate self-dealing in derivative actions, and to protect a host of other statutory policies,' but in the absence of appropriate incentive structures, 'litigated judgments are few, cheap settlements are common, and . . . the private watchdog can be bought off by tossing him the juicy bone of a higher-than-ordinary fee award in return for his acceptance of an inadequate settlement'")).

With this is mind, and considering the circumstances of this matter—the lack of incentive for aggrieved consumers to bring individual suits, that Defendants are unquestionably entities with

means to litigate, and that Defendants employ excellent legal counsel—class counsel's request for attorneys' fees is supported by the economics involved in litigating this matter.

### 11. The absence of any objections to date supports the requested fee award.

Finally, while not specifically contemplated by the *Johnson* factors, the lack of any objections from class members weighs heavily in favor of class counsel's attorneys' fee request. Indeed, the class notice apprised class members that class counsel would seek an award of attorneys' fees not to exceed one-third of the settlement fund. Significantly, to date, not a single class member has objected to any portion of the settlement, including the proposed attorneys' fees, further supporting the reasonableness of the attorneys' fees requested here. *See, e.g.*, *Hess v. Sprint Commc'ns Co. L.P.*, No. 11-35, 2012 WL 5921149, at *4 (N.D. W. Va. Nov. 26, 2012) ("The absence of objections or disapproval by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.").

## II. Class counsel's request for reimbursement of litigation costs and expenses in the amount of $7,835.51 is supported.

"An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. CIV. 6:12-1609, 2015 WL 965696, at *11 (W.D. La. Mar. 3, 2015). Here, class counsel incurred reasonable costs and expenses in connection with this matter, including travel expenses, PACER costs, mediation costs, filing fees, and other necessary expenses. Importantly, the categories of expenses for which class counsel seek reimbursement are the type of expenses routinely charged to paying clients in the marketplace and, therefore, are properly reimbursed under Rule 23. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5)

messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and *nontaxable* costs that are authorized by law or by the parties' agreement.") (emphasis added).

Here, class counsel seek reimbursement for $7,835.51 in litigation costs and expenses. *See* Exhibit A, ¶ 21; Exhibit C, ¶ 12. These expenses are eminently reasonable in a class action like this and were necessary for the successful prosecution of this action on behalf class members. Worth noting, to date, not a single class member has lodged an objection to counsel's request for reimbursement of litigation costs and expenses, which are less than the $10,000 in total costs and expenses estimated in the class notices.

## III.   Plaintiff's request for an incentive award in the amount of $5,000 is justified.

"Courts commonly permit payments to class representatives above those received in settlement by class members generally." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (Rosenthal, J.) (internal quotation omitted); *see also Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 305-06 (S.D. Miss. 2014) ("It is not unusual for a court to make an 'incentive award' to named plaintiffs because of their sacrifices in pursuit of litigation on behalf of the class."); *accord Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."); *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (explaining that "[i]ncentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit," and noting that "[n]umerous courts have authorized incentive awards"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ("[Courts] routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the

class action litigation."); *Allapattah Servs.*, 454 F. Supp. 2d at 1218 ("Incentive awards are not uncommon in class litigation where, as here, a common fund has been created for the benefit of the class."). These awards "serve an important function in promoting class action settlements." *Sheppard v. Cons. Edison Co. of N.Y., Inc.*, No. 94-CV-0403(JG), 2002 WL 2003206, at *5 (E.D.N.Y. Aug. 1, 2002).

"In deciding whether an incentive award is warranted, courts look to: (1) 'the actions the plaintiff has taken to protect the interests of the class'; (2) 'the degree to which the class has benefitted from those actions'; and (3) 'the amount of time and effort the plaintiff expended in pursuing the litigation.'" *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1089; *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation."); *accord UFCW Local 880—Retail Food Emp'rs Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235 (10th Cir. 2009) ("a class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class"); *Rodriguez*, 563 F.3d at 958 (noting that incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general").

Here, Plaintiff made all efforts necessary to protect the interests of class members. *See* Declaration of Lauren Davis, ¶¶ 7-9, attached as Exhibit B. She frequently communicated with her counsel by telephone and email. *See id.*, ¶¶ 10-11. She kept herself apprised of this matter by

reading documents filed with this Court. *See id.*, ¶ 12. She participated in the discovery process. *See id.*, ¶ 13. And she made herself available by telephone for mediation. *See id.*, ¶ 14.

Also notable, Plaintiff's request for an incentive award in the amount of $5,000 is significantly less than awards courts have approved in comparable TCPA matters. *See, e.g.*, *Jones*, 2015 WL 5704016, at *2 ($20,000 incentive award from a $1 million common fund); *Prater*, 2015 WL 8331602, at *3 ($20,000 incentive award from a $6.75 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative); *Ritchie*, 2014 WL 956131, at *5 ($12,000 incentive award from a $2.3 million common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12–cv–215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving a $20,000 service award to a TCPA class representative).

## Conclusion

Class counsel and Plaintiff respectfully request that this Court approve an award of attorneys' fees in the amount of one-third of the common fund, or $433,333, reimbursement of litigation costs and expenses in the amount of $7,835.51, and an incentive award of $5,000.

Dated: July 27, 2020                    Respectfully submitted,

                                        */s/ Aaron D. Radbil*
                                        Aaron D. Radbil
                                        Greenwald Davidson Radbil PLLC
                                        401 Congress Avenue, Suite 1540
                                        Austin, Texas 78701
                                        Phone: (512) 803-1578
                                        aradbil@gdrlawfirm.com

## CERTIFICATE OF SERVICE

I certify that on July 27, 2020, the foregoing document was filed with the Court using CM/ECF, which will send notification of such to all counsel of record.

_/s/ Aaron D. Radbil_
Aaron D. Radbil