| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| Lauren Davis, *on behalf of herself and others similarly situated*, § § § § | |
| Plaintiff, § § | |
| vs. § § | Civil Action No. 4:19-cv-1961 |
| Mindshare Ventures LLC, d/b/a AtlasRTX, Trendmaker Homes DFW, L.L.C., and Trendmaker Homes, Inc., § § § § § | |
| Defendants. § | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

i

## TABLE OF CONTENTS

Statement of the Nature and Stage of this Proceeding ................................................................... 1

Statement of Issues ......................................................................................................................... 1

Introduction ..................................................................................................................................... 1

Summary of the Settlement ............................................................................................................. 2

Claims Administration .................................................................................................................... 2

Argument ........................................................................................................................................ 4

    I.    The settlement satisfies all requirements and merits final approval. ................................. 4

        A.    The lack of fraud or collusion behind the settlement supports final approval. ............ 4

        B.    The complexity, expense, and likely duration of litigation support final approval. ...... 5

        C.    The stage of the proceedings supports final approval. .................................................. 6

        D.    The probability of Plaintiff's success on the merits, the range of possible recovery, and the uncertainty of damages support final approval. ........................................... 6

        E.    The opinion of Plaintiff's counsel further supports final approval. ........................... 10

        F.    The reaction of absent class members supports final approval. ................................ 11

        G.    Plaintiff and her counsel and have adequately represented the class. ........................ 11

        H.    The settlement treats class members equitably ........................................................... 12

    II.    Distribution of notice satisfied due process. .................................................................... 13

Conclusion .................................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139 (W.D. Wash. Oct. 22, 2013) ..................... 10

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) ....................... 5

*Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631, 2020 WL 3633780 (U.S. July 6, 2020) .................................................................................................................................. 8

*Burrow v. Forjas Taurus S.A.*, No. 16-cv-21606, 2019 WL 4247284 (S.D. Fla. Sept. 6, 2019).. 12

*Charvat v. Valente*, No. 12:5746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) .......................... 12

*Clark v. Payless ShoeSource, Inc.*, No. 2:09-cv-00915 (W.D. Wash. July 27, 2012) .................. 10

*Cleven v. Mid-Am. Apartment Communities, Inc.*, No. 1:16-CV-820-RP, 2018 WL 7077069 (W.D. Tex. Oct. 22, 2018) ........................................................................................................ 13

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ............................................... 9

*Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911 (W.D. Wash. Nov. 5, 2012) ................. 10

*Ellison v. Steven Madden, Ltd.*, No. CV11-5935 PSG (AGRX), 2012 WL 12884916 (C.D. Cal. Sept. 25, 2012) ........................................................................................................................... 9

*Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030 (N.D. Ill. Nov. 5, 2012) ....................... 10

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) ........................................... 9

*Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941 (S.D. Fla. May 24, 2019) ........................................................................................................... 8

*Halperin v. Youfit Health Clubs, LLC*, No. 18-61722-CIV (S.D. Fla. May 29, 2019) .................. 8

*Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935 (D. Minn. 2016) ................................... 9

*Henderson v. Eaton*, No. CIV.A. 01-0138, 2002 WL 31415728 (E.D. La. Oct. 25, 2002) ........... 5

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ............... 9

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ...................................... 5

*In re Jiffy Lube Int'l, Inc.*, No. 11-md-02261 (S.D. Cal. Feb. 20, 2013) ..................................... 10

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891 (E.D. La. 2012) ................................................................................................... 5

*In re Pool Prods. Distribution Market Antitrust Litig.*, MDL No. 2328, 2015 WL 4875464 (E.D. La. Aug. 13, 2015) ............................................................................................................. 7

*In re Waste Mgmt., Inc. Sec. Litig.,* No. H–99–2183 2002 WL 35644013 (S.D. Tex. May 10, 2002) ............................................................................................................................... 11

*Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291 (S.D. Miss. 2014) ....................................... 5, 6

*Kazemi v. Payless Shoesource, Inc.*, No. C-09-5142 EMC, 2011 WL 13152859 (N.D. Cal. Sept. 6, 2011) ............................................................................................................................. 9

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010) .................................................... 10

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) .......................................................... 9

*Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS MDD, 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ....................................................................................................... 9

*Marengo v. Miami Research Assocs., LLC*, No. 17-CV-20459-JLK, 2018 WL 2744606 (S.D. Fla. June 7, 2018)................................................................................................................ 8

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660 (M.D. Ala. 1988)................................ 6, 10

*Melito v. American Eagle Outfitters, Inc.*, No. 14-CV-2440, 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017) ............................................................................................................................. 9

*Mohamed v. Off Lease Only, Inc.*, No. 15-CV-23352-CIV (S.D. Fla. June 27, 2019)................... 8

*Pimental v. Google Inc.*, No. 11-CV-02585-YGR, 2013 WL 12177158 (N.D. Cal. June 26, 2013) .................................................................................................................................... 9

*Poirier v. Cubamax Travel, Inc.*, Case No. 18-23240-Altonaga (S.D. Fla. Oct. 9, 2018).............. 8

*Quintanilla v. A & R Demolition Inc.*, No. CIV.A. H–04–1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008) ............................................................................................................... 11

*Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .................................................................................................................................... 10

*Satterfield v. Simon & Schuster, Inc.*, No. C06 2893 CW, 2010 WL 11489003 (N.D. Cal. Mar. 3, 2010)......................................................................................................................... 9

*Soukhaphonh v. Hot Topic, Inc.*, No. CV165124DMGAGRX (C.D. Cal. July 29, 2019) ............. 8

*Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076 (M.D. La. May 23, 2013) ......... 10

*Steinfeld v. Discover Fin. Servs.*, No. 12-cv-1118, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014) .................................................................................................................................... 10

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) ............................... 4

*United States v. Robinson*, 434 F.3d 357 (5th Cir. 2005) ............................................................. 13

*Ward v. Flagship Credit Acceptance, LLC*, No. 17-2069, 2020 WL 759389 (E.D. Pa. Feb. 13, 2020) ............................................................................................................................................ 8

*Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM (S.D. Fla. Mar. 19, 2019) ..... 8

*Wright v. Nationstar Mortage LLC*, No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ............................................................................................................................................ 9

**Statutes**

28 U.S.C. § 1715 .............................................................................................................................. 3

**Treatises**

2 Mclaughlin On Class Actions § 6:7 (8th ed. 2011) ..................................................................... 5

**Statement of the Nature and Stage of this Proceeding**

Lauren Davis ("Plaintiff") filed this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, on behalf of a nationwide class. Following this Court's order preliminarily approving the settlement, ECF No. 47, and following the distribution of notice and administration of claims, Plaintiff now files this motion seeking final approval of the settlement.

**Statement of Issues**

This Court must now decide whether it should grant Plaintiff's unopposed request that it finally approve the settlement, and enter a final judgment and order in the form agreed to by the parties and submitted concurrently to this Court.

**Introduction**

Following arm's-length negotiations with the assistance of a well-respected mediator, Plaintiff and Mindshare Ventures LLC, d/b/a AtlasRTX ("AtlasRTX"), Trendmaker Homes DFW, L.L.C. ("Trendmaker DFW"), and Trendmaker Homes, Inc. ("Trendmaker Homes") (collectively, "Defendants"), reached a settlement that provides for an all-cash, non-reversionary fund in the amount of $1.3 million to resolve class members' claims against Defendants under the TCPA.

After receiving notice of the settlement, 350 members of the class submitted valid claims for their *pro rata* share of the settlement fund. Accordingly, after deducting from the settlement fund all costs of notice and claims administration, attorneys' fees requested, costs and litigation expenses requested, and the incentive award requested—which are subject to this Court's approval—each participating class member will receive approximately $2,282.[1]

---

[1] These figures assume an award of the requested attorneys' fees, costs, expenses, and incentive payment, *see* ECF No. 51, and may either increase slightly if duplicate or fraudulent claims are identified, or decrease slightly if this Court permits potential later-filed claims.

1

Moreover, no class member excluded himself or herself from the settlement, and no class member submitted an objection. Considering this, Plaintiff respectfully requests that this Court finally approve the settlement, and enter a final judgment and order.

Defendants do not oppose the relief Plaintiff now requests.

## Summary of the Settlement

As compensation for their TCPA claims against Defendants, class members—all persons throughout the United States (1) to whom Trendmaker DFW or AtlasRTX, on behalf of Trendmaker DFW or Trendmaker Homes, sent, or caused to be sent, a text message, (2) directed to a number assigned to a cellular telephone service, (3) from May 30, 2015 through December 11, 2019, (4) using the AtlasRTX platform/services, *see* ECF No. 47 at 2—will receive a *pro rata* share of the all-cash, non-reversionary $1.3 million settlement fund, after deducting: the cost of notice to class members and claims administration for class members; litigation costs and expenses, for which class counsel petitioned this Court, *see* ECF No. 51; reasonable attorneys' fees, calculated as a percentage of the common fund, for which for class counsel petitioned this Court, *see id.*; and an incentive award to Plaintiff, for which class counsel petitioned this Court. *See id.*

## Claims Administration

Kurtzman Carson Consultants ("KCC")—the claims administration company this Court approved—delivered to potential class members notice of the settlement. The resulting claims, lack of exclusions, and lack of objections, demonstrate not only the effectiveness of the notice, but also class members' satisfaction with the settlement.

*Direct Mail Notice*: KCC caused 9,383 notices to be mailed to potential class members. *See* Declaration of H. Jacob Hack, ¶ 6, attached as Exhibit A. KCC re-mailed any notices returned undeliverable to forwarding addresses, where undeliverable notices were returned with a

forwarding address. *Id*., ¶ 7. For undeliverable notices returned without a forwarding address, KCC performed advanced address searches to locate updated addresses, and re-mailed notices to any updated addresses obtained. *Id*., ¶ 8.

*Email Notice*: KCC caused 7,263 additional notices to be emailed to potential class members shortly before the deadline for class members to submit claims, exclude themselves from the settlement, or object to the settlement. *Id*., ¶ 9. KCC's email-specific efforts went above and beyond the notice plan required by this Court. *See* ECF No. 47 at 4 ("This Court approves the form and substance of the proposed notice of the class action settlement, which includes the postcard notice, the detachable claim form, and the question-and-answer notice to appear on the dedicated settlement website.").

*Settlement Website*: KCC established and maintains a website dedicated to the settlement—http://davistcpasettlement.com/—which includes information pertinent to class members as well as answers to frequently asked questions. *Id*., ¶ 10.

*Toll-Free Hotline*: KCC established and maintains a toll-free telephone number—(866) 810-0907—for class members to obtain information about the settlement. *Id*., ¶ 11. The toll-free telephone number was activated on July 10, 2020, and remains accessible twenty-four hours a day, seven days a week. *Id*.

*Claims*: 350 class members submitted valid claims. *Id*., ¶ 12.

*Exclusions*: 0 class members excluded themselves from the settlement. *Id*., ¶ 13.

*Objections*: 0 class members objected to the Settlement. *Id*., ¶ 14.

*Class Action Fairness Act Notice*: KCC timely served notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *Id*., ¶ 3. No government official, state or federal, objected to or raised an issue regarding the settlement. *Id*., ¶ 4.

3

**Argument**

I.   **The settlement satisfies all requirements and merits final approval.**

The Fifth Circuit identified six factors for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012).

As well, Rule 23(e) mandates consideration of several additional factors, including that the class representatives and class counsel have adequately represented class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate.

   A.  **The lack of fraud or collusion behind the settlement supports final approval.**

The parties agreed to settle this matter only after weeks of negotiation following a mediation with Bruce Freidman, Esq.[2] Accordingly, the settlement is not the product of collusion,

---

[2]   "Bruce A. Friedman, Esq. is an accomplished dispute resolution professional who has mediated and settled a wide range of cases including class action matters and serves as an arbitrator and discovery referee. Mr. Friedman began his neutral career in 2011 following 37 years as a trial lawyer handling cases in the areas of insurance, class action, professional liability, business, real estate, and entertainment. He was lead trial counsel in dozens of jury trials, bench trials, and arbitrations. He routinely represented clients in high-stakes litigation. In 2013, Mr. Friedman was named by the *Daily Journal* as one of the top neutrals in California. He has been recognized by *Chambers USA* in insurance litigation and described as a 'great strategist' with a broad commercial litigation practice. In 2012, Bruce was named as the Best Insurance Lawyer in Los Angeles by *Best Lawyers in America*." https://www.jamsadr.com/bruce-friedman/.

but rather the ultimate result of arms'-length negotiations facilitated by an experienced mediator. Significant, then, is that a settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion. *See* 2 Mclaughlin On Class Actions § 6:7 (8th ed. 2011); *accord In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012) ("any suggestion of fraud or collusion" regarding settlement was "baseless," as "the Settlement was reached only after many months of hard-fought negotiations").

### B. The complexity, expense, and likely duration of litigation support final approval.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

Here, absent settlement, the parties would have had to continue with discovery, including multiple depositions; brief both class certification and merit-related issues; and, try any issues not resolved on summary judgment. Appeals would almost certainly have followed.

The settlement, however, provides immediate relief, and avoids the certainty of additional, expensive, and protracted litigation. *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation."); *Henderson v. Eaton*, No. CIV.A. 01-0138, 2002 WL 31415728, at *3 (E.D. La. Oct. 25, 2002) (following discovery, "several fundamental issues in the case remained in dispute: . . . Resolving these

questions through a trial and, ostensibly, an appeal, would likely be burdensome and costly.").

Given as much, the complexity, expense, and likely duration of litigation adds to the settlement's fairness, reasonableness, and adequacy.

### C. The stage of the proceedings supports final approval.

Plaintiff filed her original class action complaint on June 3, 2019. ECF No. 1. Thereafter she filed two amended complaints, respectively incorporating new information learned through discovery, and altering her claims accordingly. ECF Nos. 16, 34. For their part, Defendants filed a motion for a more definite statement, ECF No. 18, a motion to dismiss, ECF No. 19, and a motion to stay, ECF No. 19, each of which Plaintiff responded to in some manner. Moreover, leading up to mediation with Mr. Friedman, the parties focused their efforts on discovery specifically targeted to foster a resolution.

All of this, together, ensured that "counsel had an adequate appreciation of the merits of the case before negotiating." *Jenkins*, 303 F.R.D. at 303-04. The parties then consummated the settlement having a clear view towards the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

The stage of the proceedings therefore bolsters the settlement's fairness, reasonableness, and adequacy.

### D. The probability of Plaintiff's success on the merits, the range of possible recovery, and the uncertainty of damages support final approval.

Courts are to consider "the likelihood and extent of any recovery from the defendants absent settlement." *Jenkins*, 300 F.R.D. at 304. That is, "[t]he settlement terms should be compared

with the likely rewards the class would have received following a successful trial of the case." *In re Pool Prods. Distribution Market Antitrust Litig.*, MDL No. 2328, 2015 WL 4875464, at *13 (E.D. La. Aug. 13, 2015) (preliminarily approving class action settlement).

Here, Plaintiff faced a number of significant merit-based hurdles. For example, Defendants argued that the AtlasRTX platform used to send the subject text messages to Plaintiff and class members is not an automatic telephone dialing system ("ATDS") as defined by the TCPA. More specifically, Defendants suggested that the AtlasRTX platform cannot randomly or sequentially generate telephone numbers to be dialed, and therefore it is not an ATDS. As well, Defendants contended that the content, timing, scope, and recipient of any text message sent using the AtlasRTX platform must be determined and controlled by the user, and that this "human intervention" means that the AtlasRTX platform cannot be an ATDS. Of course, if the AtlasRTX platform is not an ATDS, the TCPA does not govern the text message giving rise to this matter, and thus could not serve as a basis for which any class member could obtain relief under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Additionally, Defendants argued that the text messages at issue were not sent to advertise or telemarket. If true, prior express *written* consent would not have been required to send the text messages; rather, simple prior express consent would have been sufficient. *Compare* 47 C.F.R. § 64.1200(a)(2) *and* 47 C.F.R. § 64.1200(f)(8) *with* 47 U.S.C. § 227(b)(1)(A)(iii). This matters because text messages sent in response to unrelated inquiries with Defendants—as Plaintiff alleges many of the subject text messages were—would not be governed by the TCPA should they truly not have been sent to advertise or telemarket, a point that Plaintiff disputes.

Furthermore, during the pendency of this case—and at the time the parties agreed to resolve this matter—the Supreme Court, in *Barr v. Am. Ass'n of Political Consultants, Inc.*, was

7

considering the constitutionality of the TCPA as a whole. No. 19-631, 2020 WL 3633780 (U.S. July 6, 2020). And if the Court would have found the TCPA to be unconstitutional, Plaintiff's and class members' claims would have suddenly ceased to exist, thus extinguishing any hope of a recovery. *See Ward v. Flagship Credit Acceptance, LLC*, No. 17-2069, 2020 WL 759389, at *9 (E.D. Pa. Feb. 13, 2020) ("Depending on the approach the Supreme Court takes [in *Barr*], the general constitutionality of the TCPA may be in question."). Ultimately, the Court did not find the TCPA unconstitutional, but instead severed a portion of the statute not at issue here. In other words, the Court "conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id*. at *2 (Kavanaugh, J.). Stated yet another way, the Court "sever[ed] the 2015 government-debt exception and le[ft] in place the longstanding robocall restriction." *Id*. at *13.

No matter, and in the face of these very significant hurdles, the settlement breaks down to approximately $132 per class member ($1.3 million ÷ 9,863 class members). And this compares quite favorably with analogous advertising and telemarketing text message settlements under the TCPA, all of which various district courts approved. *See, e.g.*, *Soukhaphonh v. Hot Topic, Inc.*, No. CV165124DMGAGRX, ECF No. 255 (C.D. Cal. July 29, 2019) ($2 per person); *Mohamed v. Off Lease Only, Inc.*, No. 15-CV-23352-CIV, ECF No. 382, at *1 (S.D. Fla. June 27, 2019) ($50); *Halperin v. Youfit Health Clubs, LLC*, No. 18-61722-CIV, ECF No. 37 (S.D. Fla. May 29, 2019) ($7.50); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ($11.80); *Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM, ECF No. 39 (S.D. Fla. Mar. 19, 2019) ($5); *Poirier v. Cubamax Travel, Inc.*, Case No. 18-23240-Altonaga (S.D. Fla. Oct. 9, 2018) ($7); *Marengo v. Miami Research Assocs., LLC*, No. 17-CV-20459-JLK, 2018 WL 2744606, at *1 (S.D. Fla. June 7, 2018) ($130); *Melito v.*

8

*American Eagle Outfitters, Inc.*, No. 14-CV-2440, 2017 WL 3995619, at *1 (S.D.N.Y. Sept. 11, 2017) ($23); *Pimental v. Google Inc.*, No. 11-CV-02585-YGR, 2013 WL 12177158, at *3 (N.D. Cal. June 26, 2013) ($15); *Ellison v. Steven Madden, Ltd.*, No. CV11-5935 PSG (AGRX), 2012 WL 12884916, at *5 (C.D. Cal. Sept. 25, 2012) ($150); *Kazemi v. Payless Shoesource, Inc.*, No. C-09-5142 EMC, 2011 WL 13152859, at *1 (N.D. Cal. Sept. 6, 2011) ($25 merchandise certificate); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS MDD, 2011 WL 6300050, at *1 (S.D. Cal. Dec. 15, 2011) ($131); *Satterfield v. Simon & Schuster, Inc.*, No. C06 2893 CW, 2010 WL 11489003, at *1 (N.D. Cal. Mar. 3, 2010) ($169).

As well, after deducting the requested attorneys' fees, litigation costs and expenses, costs of notice and claims administration, and incentive award, *see* ECF No. 51, participating class members who submitted valid claims will receive approximately $2,282,[3] which is an amount near the very top of TCPA class action settlements generally. See *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1047 (S.D. Cal. 2015) ($13.75 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per claimant falls "within the range of recoveries" in a TCPA class action); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (noting that while "thirty dollars per claimant 'falls on the lower end of the scale,' it is nonetheless 'within the range of recoveries' in TCPA class actions"); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL

---

[3]   Because the per-claimant recovery exceeds $600, KCC will withhold a percentage of each claimant's recovery for tax purposes. Claimants will be provided with information regarding how to seek a refund of this withholding from the IRS, where applicable.

9

4273358, at *10 (N.D. Cal. Aug. 29, 2014) (between $20 and $40 per claimant); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (less than $50 per claimant).[4]

This is not surprising, however, given the tremendous $132 gross (settlement fund amount divided by total class members) per class member figure.

At bottom, then, the objectively excellent result here makes the settlement fair, reasonable, and adequate. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—over $2,250 less than the approximate recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

### E. The opinion of Plaintiff's counsel further supports final approval.

"The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010); *Henderson*, 2002 WL 31415728, at *4 ("Finally, the Court finds that the opinions of class counsel, class representatives, and absent class members weigh in favor of settlement. Counsel for both plaintiff and defendant concur that the settlement is fair."); *accord Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all

---

[4] *See also Agne v. Papa John's Int'l*, No. 2:10-cv-01139, ECF No. 389 (W.D. Wash. Oct. 22, 2013) ($50 cash recovery plus $13 in merchandise per claimant); *Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (approving a TCPA class action settlement that provides up to $15 cash payment); *In re Jiffy Lube Int'l, Inc.*, No. 11-md-02261, ECF No. 97 (S.D. Cal. Feb. 20, 2013) (class members entitled to vouchers for services valued at $17.29 or a cash payment of $12.97); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, ECF No. 74 (N.D. Ill. Nov. 5, 2012) ($28.13 recovery per claimant); *Cubbage v. The Talbots, Inc.*, No. 2:09-cv-00911, ECF No. 114 (W.D. Wash. Nov. 5, 2012) ($40 or $80 merchandise certificate per claimant); *Clark v. Payless ShoeSource, Inc.*, No. 2:09-cv-00915, ECF No. 72 (W.D. Wash. July 27, 2012) ($10 merchandise certificate per claimant);.

pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

Here, Plaintiff's counsel is highly experienced in class action litigation, particularly in cases under the TCPA. *See* ECF 44-1, ¶¶ 9-37. And Plaintiff's counsel firmly believes that the settlement is fair, reasonable, adequate, and in the best interests of class members. *See id.*, ¶ 61. This further highlights the fairness, reasonableness, and adequacy of the settlement.

### F. The reaction of absent class members supports final approval.

"The court should also consider the reaction of the class to the settlement when, as here, notice was properly provided. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Quintanilla v. A & R Demolition Inc.*, No. CIV.A. H–04–1965, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2008) (Rosenthal, J.); *In re Waste Mgmt., Inc. Sec. Litig.*, No. H–99–2183, 2002 WL 35644013, at *21 (S.D. Tex. May 10, 2002) ("Equally supportive of approving the settlement is that no Class Member has filed an objection to any term of the settlement. By not filing objections, Class Members have tacitly indicated their approval of the proposed settlement. This lack of objection strongly suggests that the settlement is fair and should be approved.").

Here, that no class member excluded himself or herself from the settlement, and that no class member objected to the settlement, additionally demonstrates that the settlement is fair, reasonable, and adequate.

### G. Plaintiff and her counsel and have adequately represented the class.

Plaintiff was, throughout this matter, committed to acting in the best interests of class members. She stayed updated on the case and spoke with her counsel regularly. Plaintiff also remained prepared to, and did, make all necessary decisions required of her in the best interests of

11

the class members. Similarly, Plaintiff's counsel—who is experienced in complex litigation and has served as class counsel on numerous occasions—zealously litigated on behalf of Plaintiff and class members, and against sophisticated and experienced defense counsel. And in the end, with her counsel's guidance, Plaintiff obtained an excellent recovery for both herself and class members.

### H. The settlement treats class members equitably.

Rule 23(e)(2)(D) requires that a court confirm that a class action settlement treats all class members equitably. The Advisory Committee's Note to Fed. R. Civ. P. 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."

Here, all class members have the same claims. Correspondingly, the settlement provides that each participating class member will receive an equal portion of the settlement fund. *See Burrow v. Forjas Taurus S.A.*, No. 16-cv-21606, 2019 WL 4247284, at *10 (S.D. Fla. Sept. 6, 2019) ("The Settlement also treats Settlement Class Members equally and fairly. There is no distinction between the benefits offered, and all Settlement Class Members receive the benefit of the Enhanced Warranty Service automatically. Furthermore, the steps Settlement Class Members must take to receive the Enhanced Warranty Service and the Inconvenience Payment are far from onerous."). Additionally, the release affects each class member in the same way.

Moreover, class members had the opportunity to exclude themselves from the settlement and pursue their own claims. *Accord Charvat v. Valente*, No. 12:5746, 2019 WL 5576932, at *6 (N.D. Ill. Oct. 28, 2019) ("Moreover, the ability to opt out of the settlement allows class members who received more than three calls to pursue the possibility of a greater award in an individual

12

suit.").

As a result, this factor supports approval of the settlement.

**II.     Distribution of notice satisfied due process.**

Rule 23 requires that "the court must direct to class members the best notice that is practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Cleven v. Mid-Am. Apartment Communities, Inc.*, No. 1:16-CV-820-RP, 2018 WL 7077069, at *1 (W.D. Tex. Oct. 22, 2018) (citing Fed. R. Civ. P. 23(c)(2)(B)). But "[d]ue process does not require actual notice or actual receipt of notice. *United States v. Robinson*, 434 F.3d 357, 366 (5th Cir. 2005).

Distribution of notice here far exceeded this minimum standard. In particular, KCC used all reasonable efforts to provide direct mail notice to each member of the settlement class. *See* Exhibit A, ¶¶ 5-9. Additionally, KCC supplemented direct mail notice with a dedicated settlement website, and toll-free telephone numbers. *See id.*, ¶¶ 10-11.

In sum, the notice plan amply protected class members' due process rights.

## Conclusion

Plaintiff respectfully submits that the settlement—which requires Defendants to pay $1.3 million into an all-cash, non-reversionary fund—constitutes an excellent result for class members. And for the foregoing reasons, she respectfully requests that this Court finally approve the settlement, and enter a final judgment and order in the form agreed to by the parties and submitted concurrently to this Court.

Dated: September 1, 2020         Respectfully submitted,

*/s/ Aaron D. Radbil*
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701

Phone: (512) 803-1578<br>
aradbil@gdrlawfirm.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I certify that on September 1, 2020, the foregoing document was filed with the Court using CM/ECF, which will send notification of such to all counsel of record.

<u>/s/ Aaron D. Radbil</u><br>
Aaron D. Radbil